**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOHN JOSEPH SEKA,                    )
                                     )
              Petitioner,            )          3:05-cv-0409-HDM-VPC
                                     )
vs.                                  )
                                     )          **ORDER**
E.K. McDANIEL, *et al.*,             )
                                     )
              Respondents.           )
_____ /

       This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, by John Seka, a Nevada prisoner represented by counsel. This action comes to the Court with respect to its merits.

**I.**      **Procedural History**

       Petitioner was charged in a four count information on June 30, 1999, with two counts of Murder with the Use of a Deadly Weapon and two counts of Robbery with the Use of a Deadly Weapon, in connection with the robbery and shooting deaths of Peter Limanni and Eric Hamilton in 1998. (Exhibit 4).[1]  A preliminary hearing was held on June 28, 1999. (Exhibit 3).  On July 26, 1999, the State filed a Notice of Intent to Seek the Death Penalty. (Exhibit 5).  A pretrial petition for

_____

     [1] The exhibits referenced in this order were provided by petitioner, through counsel, in support of the Amended Petition. The exhibits are found in the Court's record at Docket #23 through #32.

1   a writ of habeas corpus was filed on September 22, 1999, alleging that there was insufficient

2   evidence for petitioner to stand trial.  (Exhibit 7).  The petition was denied on November 29, 1999.

3   (Exhibit 13).

4             A jury trial commenced on February 12, 2001, and continued through February 22,

5   2001.  (Exhibits 21-39).  The jury issued a verdict on March 1, 2001, finding petitioner guilty of

6   Murder with the Use of a Deadly Weapon on Count I, Second Degree Murder with Use of a Deadly

7   Weapon on Count II, and guilty of Robbery on Counts III and IV.  (Exhibit 41).  The jury deadlocked

8   on deciding a sentence and a stipulation was filed allowing for a sentence without parole to be

9   imposed by the trial judge.  (Exhibit 43).  Sentencing was held on April 26, 2001.  (Exhibit 45).

10  Petitioner was sentenced to the following: On Count I, life without the possibility of parole, plus a

11  consecutive life without the possibility of parole for use of a deadly weapon; on Count II, life with

12  the possibility of parole plus an equal and consecutive life with the possibility of parole for use of a

13  deadly weapon; on Count III, 156 months consecutive to Count II; and on Count IV, 156 months

14  consecutive to Count III.  The judgment reflecting this sentence was filed on May 9, 2001.  (Exhibit

15  46).

16            Petitioner filed a notice of appeal on May 15, 2001.  (Exhibit 47).  The Nevada

17  Supreme Court entered an order of affirmance on April 8, 2003.  (Exhibit 54).  Remittitur issued on

18  May 14, 2003.  (Exhibit 55).

19            Petitioner filed a state post-conviction habeas petition on February 13, 2004.  (Exhibit

20  57).  A hearing was held on November 5, 2004.  (Exhibit 63).  On January 31, 2005, the state district

21  court entered an order denying the state habeas petition.  (Exhibit 64).

22            On February 9, 2005, petitioner filed a notice of appeal from the denial of the state

23  habeas petition.  (Exhibit 67).  The Nevada Supreme Court filed an order of affirmance on June 8,

24  2005.  (Exhibit 71).  Remittitur issued on July 22, 2005.  (Exhibit 72).

25            Petitioner mailed his federal habeas petition on July 14, 2005.  (Docket #4).  This

26  Court appointed the Federal Public Defender to represent petitioner on July 22, 2005.  (Docket #3).

On May 18, 2007, an amended petition was filed.  (Docket #22).  Petitioner makes the following claims in the amended petition (Docket #22):

(1) In violation of the Fifth, Sixth, and Fourteenth Amendments, the trial court abused its discretion when it instructed the jury that evidence of the petitioner's flight to Pennsylvania could be considered in deciding his guilt.

(2) In violation of the Fifth, Sixth, and Fourteenth Amendments, the trial court lacked territorial jurisdiction to try petitioner for the murder of Limanni where the body was found in California and there was no evidence that the crimes of murder and robbery, or any part, were committed in Nevada.

(3) In violation of the Fifth and Fourteenth Amendments, the trial court's joinder of the murder counts and the robbery counts violated petitioner's right to a fair trial.

(4) In violation of the Fifth and Fourteenth Amendments, the State adduced insufficient evidence to convict petitioner of murder and robbery, where the evidence was circumstantial.

(5) In violation of the Fifth and Fourteenth Amendments, the State failed to preserve blood samples where the State's testing exhausted the samples.

(6) In violation of the Fifth, Sixth, and Fourteenth Amendments, the reasonable doubt instruction improperly minimized the State's burden of proof at trial.

(7) In violation of the Fifth, Sixth, and Fourteenth Amendments, the trial court erred in instructing the jury that the verdict need not be unanimous concerning the theory of murder as long as all jurors believed that murder had been proved.

(8) In violation of the Fifth, Sixth, and Fourteenth Amendments, the trial court erred in instructing the jury on malice in a manner that allowed it to presume malice without proof beyond a reasonable doubt.

(9) In violation of the Fifth, Sixth, and Fourteenth Amendments, the instruction defining premeditation improperly minimized the State's burden of proof.

(10) In violation of the Fifth and Fourteenth Amendments, the prosecutor committed misconduct during closing argument by arguing facts not in evidence and by vouching for a witness.

(11) In violation of the Sixth and Fourteenth Amendments, trial counsel rendered ineffective assistance by:

a. trial counsel's failure to adequately investigate witness

3

Cramer's psychological and drug history;

b. trial counsel's failure to retain a psychological expert to testify regarding the drugs Cramer was taking;

c. trial counsel's failure to adequately investigate and interview witnesses Justin Nguyen, Marilyn Mignone, Amir Mohammed, and Ken Bates;

d. trial counsel's failure to retain a forensic pathologist to testify as to the time of death of victim Limanni

e. trial counsel's failure to obtain phone and bank records of victim Limanni and his business

(12)  In violation of the Sixth and Fourteenth Amendments, appellate counsel rendered ineffective assistance by:

a.  failure to submit the direct appeal claims as constitutional claims;

b.  failure to raise the issue of the trial court's erroneous instructions pertaining to reasonable doubt, unanimous verdict, malice aforethought, and premeditation;

c.  failure to raise the issue of prosecutorial misconduct.

(13) Petitioner is entitled to relief due to cumulative error.

By order filed February 20, 2008, this Court dismissed Grounds 1, 2, 3, 6, 7, 8, 9, and 10 of the amended petition on grounds of procedural default.  (Docket #43).  In the same order, the Court directed respondents to answer Grounds 4, 5, 11, 12, and 13 of the amended petition.  (*Id.*).

Respondents filed an answer to the remaining claims on March 31, 2008.  (Docket #45).  On August 1, 2008, petitioner filed a reply to the answer.

## II.      Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness

1   by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

2   **III.    Discussion**

3          **A. Ground Four**

4                  Petitioner alleges in Ground Four that the State adduced insufficient evidence to

5   convict petitioner of murder and robbery, where the evidence was circumstantial.

6                  On direct appeal, the Nevada Supreme Court applied the appropriate federal standard

7   announced in *Jackson v. Virginia*, 433 U.S. 307 (1979).  (Exhibit 54, at p. 13).  The Nevada

8   Supreme Court noted that an "intensive amount" of supporting forensic evidence had been adduced

9   at trial, including:  DNA results linking the bodies to the 1929 Western Avenue location, the Toyota

10  pick-up truck, and company van; analyses of tire marks; analytical matches between bullets and

11  bullet fragments with those found at the 1933 Western Avenue location; and evidence that both

12  victims were killed at the Western Avenue locations owned by Limanni.  (Exhibit 54).  The Nevada

13  Supreme Court noted that a witness for the state testified regarding an admission made by Seka to

14  him that he shot Limanni.  (*Id.*, at p. 6).  The Court noted that witnesses had testified that both

15  victims had large amounts of cash in their possession shortly before they went missing.  (*Id.* at p.

16  10).

17                 The factual findings of the Nevada Supreme Court are presumed correct.  28 U.S.C. §

18  2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

19  decision was contrary to, or involved an unreasonable application of, clearly established federal law,

20  as determined by the United States Supreme Court, or that it was based on an unreasonable

21  determination of the facts in light of the evidence presented in the state court proceeding.  The Court

22  will deny habeas relief with respect to Ground Four.

23         **B. Ground Five**

24                 Petitioner alleges in Ground Five that the State failed to preserve blood samples

25  where the state's testing exhausted the samples.

26                 To succeed on this claim, petitioner must allege and prove that the loss of potentially

6

1  exculpatory evidence by a state actor was done in bad faith and that the destruction caused the

2  petitioner to suffer actual prejudice.  *Arizona v. Youngblood*, 488 U.S. 51, 56-57 (1988).  The

3  Nevada Supreme Court concluded that petitioner had no shown bad faith on the part of the State

4  actor.  (Exhibit 54, at p. 12).   The Nevada Supreme Court stated:

5          Seka does not show that the State acted in bad faith.  Dr. Welch, a
        forensic chemist with LVMPD, testified at the time the DNA samples

6          were tested, the department's testing system required a large amount of
        a sample.  Also, Dr. Welch testified that at the time the samples were

7          tested there was no formal or informal procedure in place to alert the
        district attorney's office before using the entire sample.  Currently,

8          accordingly to Dr. Welch, the department tries to present at least half
        the sample for the defense.  Therefore, we conclude that the record

9          demonstrates that the State did not destroy DNA samples in bad faith.

10  (Exhibit 54, at p. 12).

11          The Nevada Supreme Court further noted that petitioner had failed to show prejudice,

12  as follows:

13          Also, Seka does not show that he was prejudiced by the loss of
        evidence.  Other blood samples were available from the various crime

14          scenes that contained DNA of both Limanni and Hamilton, which Seka
        could have re-tested.  In addition, Seka does not point to any evidence

15          that demonstrates that the first tests done on the DNA samples that
        matched Seka's DNA were flawed.  Thus, we conclude the destruction

16          of these samples, which clearly identify both Seka's and the victims'
        DNA, did not prejudice his case.

17  (Exhibit 54, at p. 12).

18          The factual findings of the Nevada Supreme Court are presumed correct.  28 U.S.C. §

19  2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

20  decision was contrary to, or involved an unreasonable application of, clearly established federal law,

21  as determined by the United States Supreme Court, or that it was based on an unreasonable

22  determination of the facts in light of the evidence presented in the state court proceeding.  The Court

23  will deny habeas relief with respect to Ground Five.

24      **C.  Ground Eleven**

25          Petitioner claims that his trial counsel rendered ineffective assistance by: (a) failing to

26  adequately investigate witness Cramer's psychological and drug history; (b) failing to retain a

1  psychological expert to testify regarding the drugs Cramer was taking; (c) failing to adequately

2  investigate and interview witnesses Justin Nguyen, Marilyn Mignone, Amir Mohammed, and Ken

3  Bates; (d) failing to retain a forensic pathologist to testify to the time of death of victim Limanni; (e)

4  failing to obtain phone and bank records of victim Limanni and his business.

5  Ineffective assistance of counsel claims are governed by the two-part test announced

6  in *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland,* the Supreme Court held that a

7  petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the

8  attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the

9  Sixth Amendment, and (2) that the deficient performance prejudiced the defense.  *Williams v.*

10  *Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish

11  ineffectiveness, the defendant must show that counsel's representation fell below an objective

12  standard of reasonableness.  *Id.*  To establish prejudice, the defendant must show that there is a

13  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

14  would have been different.  *Id.*  A reasonable probability is "probability sufficient to undermine

15  confidence in the outcome."  *Id.*  Additionally, any review of the attorney's performance must be

16  "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

17  order to avoid the distorting effects of hindsight.  *Strickland,* 466 U.S. at 689.  It is the petitioner's

18  burden to overcome the presumption that counsel's actions might be considered sound trial strategy.

19  *Id.*

20  Ineffective assistance of counsel under *Strickland* requires a showing of deficient

21  performance of counsel resulting in prejudice, "with performance being measured against an

22  'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

23  *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

24  ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

25  to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

26  5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

1  reasonable professional assistance.  *Id.*

2  **1.  Grounds 11(a) and 11(b)**

3  Petitioner claims ineffective assistance of counsel based on trial counsel's failure to

4  adequately investigate witness Cramer's psychological and drug history and counsel's failure to

5  retain a psychological expert to testify regarding the drugs Cramer was taking.  The Nevada Supreme

6  Court addressed these claims as follows:

7  At the evidentiary hearing, Seka's former trial counsel testified that
   they repeatedly attempted to obtain Cramer's psychological records but
8  were unable to do so.  Further, the record on appeal reveals that Seka's
   trial counsel cross-examined Cramer regarding his psychological
9  problems, his admittance into psychiatric and alcoholic treatment
   programs and the drugs Cramer was taking for his psychological
10  problems.  Seka failed to demonstrate that his trial counsel were
    ineffective in this regard.

11  (Exhibit 71, at p. 3).  The Nevada Supreme Court went on to conclude that:

12  The record reveals that Cramer admitted on the stand that he suffered
13  from severe depression and alcoholism and that he had previously been
    in three treatment programs for those problems.  He further admitted
14  that he was taking several prescription drugs for his problems and
    testified regarding the effects of those drugs.  Seka failed to
15  demonstrate that retaining an independent psychologist to testify about
    Cramer's problems would have altered the outcome of his trial.

16  (*Id.*).  The Nevada Supreme Court correctly held that petitioner failed to show that trial counsel was

17  ineffective under the *Strickland* standard.

18  The factual findings of the Nevada state courts are presumed correct.  28 U.S.C. §

19  2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

20  decision with respect to Grounds 11(a) and 11(b) was contrary to, or involved an unreasonable

21  application of, clearly established federal law, as determined by the United States Supreme Court, or

22  that it was based on an unreasonable determination of the facts in light of the evidence presented in

23  the state court proceeding.  Counsel did not fall beyond an objective standard of reasonableness

24  under prevailing norms.  Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis,

25  as he has not shown that, but for the alleged actions of counsel, the outcome of the proceeding would

26  have been different.  Petitioner's counsel was not ineffective and this Court will deny habeas relief

9

1   with respect to Grounds 11(a) and 11(b).

2   **2. Ground 11(c)**

3   Petitioner asserts ineffective assistance of counsel based on trial counsel's failure to

4   adequately investigate and interview witnesses Justin Nguyen, Marilyn Mignone, Amir Mohammed,

5   and Ken Bates, who were friends or business associates of petitioner and who presumably would

6   have testified on behalf of petitioner.  The Nevada Supreme Court noted that counsel testified at the

7   evidentiary hearing that he attempted to contact each of these individuals, but was unable to locate

8   any of them, even with the use of an investigator.  (Exhibit 71, at p. 4).

9   The factual findings of the Nevada state courts are presumed correct.  28 U.S.C. §

10  2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

11  decision with respect to Ground 11(c) was contrary to, or involved an unreasonable application of,

12  clearly established federal law, as determined by the United States Supreme Court, or that it was

13  based on an unreasonable determination of the facts in light of the evidence presented in the state

14  court proceeding.  Counsel did not fall beyond an objective standard of reasonableness under

15  prevailing norms.  Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis, as he

16  has not shown that, but for the alleged actions of counsel, the outcome of the proceeding would have

17  been different.  Petitioner's counsel was not ineffective and this Court will deny habeas relief with

18  respect to Ground 11(c).

19  **3. Ground 11(d)**

20  Petitioner claims that trial counsel was ineffective for failing to retain a forensic

21  pathologist to testify as to the time of death of victim Limanni.  In addressing this claim, the Nevada

22  Supreme Court found that counsel was not ineffective, noting that counsel did in fact consult a

23  forensic pathologist as part of the investigation, and that counsel cross-examined the coroner

24  regarding the time of death.  (Exhibit 71, at p. 4).

25  The factual findings of the Nevada state courts are presumed correct.  28 U.S.C. §

26  2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

10

1   decision with respect to Ground 11(d) was contrary to, or involved an unreasonable application of,

2   clearly established federal law, as determined by the United States Supreme Court, or that it was

3   based on an unreasonable determination of the facts in light of the evidence presented in the state

4   court proceeding.  Counsel did not fall beyond an objective standard of reasonableness under

5   prevailing norms.  Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis, as he

6   has not shown that, but for the alleged actions of counsel, the outcome of the proceeding would have

7   been different.  Petitioner's counsel was not ineffective and this Court will deny habeas relief with

8   respect to Ground 11(d).

9   **4. Ground 11(e)**

10   Petitioner claims that trial counsel was ineffective for failing to obtain phone and

11   bank records of victim Limanni and his business.  As to this claim, the Nevada Supreme Court held

12   the following:

13   > At the evidentiary hearing, Seka's former trial counsel testified that
   > they obtained Cinergi's phone records and Limanni's cell phone

14   > records prior to trial.  Seka's former trial counsel further testified that
   > they made a strategic decision not to present the phone records to the

15   > jury.  Seka's former trial counsel testified that their strategy was to
   > impeach the State's witness by demonstrating during cross-

16   > examination that the detective subpoenaed the incorrect phone records
   > for Limanni.  '[T]his court will not second-guess an attorney's tactical

17   > decisions where they relate to trial strategy and are within the
   > attorney's discretion. [Footnote omitted].  Seka failed to demonstrate

18   > that his trial counsel were deficient in this regard.

19   (Exhibit 71, at p. 5).  Moreover, no bank or business records were produced at the evidentiary

20   hearing or otherwise.

21   The factual findings of the Nevada state courts are presumed correct.  28 U.S.C. §

22   2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

23   decision with respect to Ground 11(e) was contrary to, or involved an unreasonable application of,

24   clearly established federal law, as determined by the United States Supreme Court, or that it was

25   based on an unreasonable determination of the facts in light of the evidence presented in the state

26   court proceeding.  Counsel did not fall beyond an objective standard of reasonableness under

1    prevailing norms.  Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis, as he

2    has not shown that, but for the alleged actions of counsel, the outcome of the proceeding would have

3    been different.  Petitioner's counsel was not ineffective and this Court will deny habeas relief with

4    respect to Ground 11(e).

5    **D. Ground Twelve**

6            Petitioner claims that his appellate counsel rendered ineffective assistance by: (a)

7    failing to submit the direct appeal claims as constitutional claims; (b) failing to raise the issue of the

8    trial court's erroneous instructions pertaining to reasonable doubt, unanimous verdict, malice

9    aforethought, and premeditation; and (c) failing to raise the issue of prosecutorial misconduct.

10           The *Strickland* standard applies to challenges of effective appellate counsel.  *Smith v.*

11   *Robbins*, 528 U.S. 259, 285 (2000).  Appellate counsel has no constitutional duty to raise every non-

12   frivolous issue requested by the client.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

13   **1. Ground 12(a)**

14           Petitioner claims that his appellate counsel was ineffective because he failed to raise

15   the issues on direct appeal as federal constitutional claims.  The Nevada Supreme Court considered

16   this claim and concluded that "Seka failed to demonstrate that the results of his direct appeal would

17   have been different if counsel had 'federalized' the issues.  Accordingly, we conclude that he did not

18   establish that appellate counsel was ineffective on this claim."  (Exhibit 71, at p. 12).

19           Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

20   decision with respect to Ground 12(a) was contrary to, or involved an unreasonable application of,

21   clearly established federal law, as determined by the United States Supreme Court, or that it was

22   based on an unreasonable determination of the facts in light of the evidence presented in the state

23   court proceeding.  Appellate counsel did not fall beyond an objective standard of reasonableness

24   under prevailing norms.  Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis,

25   as he has not shown that, but for the alleged actions of appellate counsel, the outcome of the

26   proceeding would have been different.  Petitioner's appellate counsel was not ineffective and this

1   Court will deny habeas relief with respect to Ground 12(a).

2                   **2.  Ground 12(b)**

3             Petitioner claims that his appellate counsel rendered ineffective assistance by failing

4   to raise the issue of the trial court's erroneous instructions pertaining to reasonable doubt, unanimous

5   verdict, malice aforethought, and premeditation.  The Nevada Supreme Court held that appellate

6   counsel was not deficient for not raising issues of alleged erroneous jury instructions because the

7   instructions as given "provided a correct statement of the law and did not lower the burden imposed

8   on the State." (Exhibit 71, at p. 8).  The Court further found that the evidence supported the verdicts

9   of first degree murder under a theory of felony murder or a theory of premeditated murder.  (Exhibit

10  71, at pp. 8-9).

11            The factual findings of the Nevada state courts are presumed correct.  28 U.S.C. §

12  2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

13  decision with respect to Ground 12(b) was contrary to, or involved an unreasonable application of,

14  clearly established federal law, as determined by the United States Supreme Court, or that it was

15  based on an unreasonable determination of the facts in light of the evidence presented in the state

16  court proceeding.  Appellate counsel did not fall beyond an objective standard of reasonableness

17  under prevailing norms.  Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis,

18  as he has not shown that, but for the alleged actions of appellate counsel, the outcome of the

19  proceeding would have been different.  Petitioner's appellate counsel was not ineffective and this

20  Court will deny habeas relief with respect to Ground 12(b).

21                  **3.  Ground 12(c)**

22            Petitioner claims that his appellate counsel rendered ineffective assistance by failing

23  to raise the issue of prosecutorial misconduct.  Specifically, petitioner alleges that counsel for the

24  State "committed prosecutorial misconduct during closing argument when he vouched for one of his

25  police officers and when he argued facts not in evidence." (Amended Petition, at p. 32).  The

26  Nevada Supreme Court concluded that, even if appellate counsel had raised these claims of

13

misconduct on direct appeal, he would not have been successful under the law governing

prosecutorial misconduct, and thus, there was no *Strickland* violation.  (Exhibit 71, at p. 10-12).

The factual findings of the Nevada state courts are presumed correct.  28 U.S.C. §

2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

decision with respect to Ground 12(c) was contrary to, or involved an unreasonable application of,

clearly established federal law, as determined by the United States Supreme Court, or that it was

based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.  Appellate counsel did not fall beyond an objective standard of reasonableness

under prevailing norms.  Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis,

as he has not shown that, but for the alleged actions of appellate counsel, the outcome of the

proceeding would have been different.  Petitioner's appellate counsel was not ineffective and this

Court will deny habeas relief with respect to Ground 12(c).

**E.  Ground Thirteen**

Petitioner claims that because of the cumulative effect of errors that were raised on

direct appeal and in state habeas proceedings, he is entitled to habeas relief.  The Nevada Supreme

Court found that because petitioner's claims were without merit, there was no cumulative error.

(Exhibit 71, at pp. 12-13).  Petitioner has failed to meet his burden of proving that the Nevada

Supreme Court's decision with respect to his cumulative error argument was contrary to, or involved

an unreasonable application of, clearly established federal law, as determined by the United States

Supreme Court, or that it was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding.  This Court will deny habeas relief with respect to

Ground 13.

**IV.    Certificate of Appealability**

In order to proceed with his appeal, petitioner must receive a certificate of

appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435

F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir.

1    2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional

2    right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529

3    U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the

4    district court's assessment of the constitutional claims debatable or wrong."  *Id.* (*quoting Slack*, 529

5    U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating

6    that the issues are debatable among jurists of reason; that a court could resolve the issues differently;

7    or that the questions are adequate to deserve encouragement to proceed further.  *Id.*

8           This Court has considered the issues raised by petitioner, with respect to whether they

9    satisfy the standard for issuance of a certificate of appealability, and determines that none meet that

10   standard.  The Court will therefore deny petitioner a certificate of appealability.

11   **V.     Conclusion**

12          **IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is

13   **DENIED IN ITS ENTIRETY**.

14          **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT**

15   **ACCORDINGLY.**

16          **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

17   **APPEALABILITY.**

18          DATED this 26th day of August, 2008.

19                                    _Howard D McKibben_

20                                    UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26